IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| LEONARD ACKERMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| Officer JAMES ALLEN (Star No. 9253), | ) | |
| Officer MARK CZAPLA (Star No. 19544), | ) | |
| and the CITY OF CHICAGO, ILLINOIS, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Now comes Plaintiff LEONARD ACKERMAN, by and through his attorneys, Loevy & Loevy, and complaining of Chicago Police Officer JAMES ALLEN (Star No. 9253), Chicago Police Officer MARK CZAPLA (Star No. 19544), and the CITY OF CHICAGO, ILLINOIS, states as follows:

### Introduction

1. On June 23, 2014, Leonard Ackerman, a 59-year-old man, had his left elbow dislocated, his right elbow broken, and the muscle and tissue of his left arm severely damaged by Defendants Chicago Police Officers James Allen and Mark Czapla. Mr. Ackerman was doing nothing more than trying to get a prescription filled at Walgreens.

2. Mr. Ackerman was not armed and posed no physical threat to these officers.

3. Nonetheless, without warning or justification, Defendants resorted to force to place him under arrest.

4. Defendants' use of excessive force caused Mr. Ackerman to suffer permanent injuries including ongoing severe pain.

5. Plaintiff brings this lawsuit under 42 U.S.C. § 1983 for violations of his constitutional rights, seeking such redress for his injuries as the law allows.

## Jurisdiction and Venue

6. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 1367.

7. Venue is proper under 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claim occurred in this district. In addition, Defendant City of Chicago is a municipal corporation in this district. Further, on information and belief, all Defendant officers reside in this judicial district.

## The Parties

8. Plaintiff LEONARD ACKERMAN is a resident of Schaumburg, Illinois. To the extent that he is able, he works as a freelance sports reporter.

9. Defendant JAMES ALLEN was at all times relevant to this Complaint a Chicago Police Officer, Star number 9253. Defendant Allen is sued here in his individual capacity. At all times relevant to this Complaint, Defendant Allen was acting under color of law and within the scope of his employment.

10. Defendant MARK CZAPLA was at all times relevant to this Complaint a Chicago Police Officer, Star number 19544. Defendant Czapla is sued here in his individual capacity. At all times relevant to this Complaint, Defendant Czapla was acting under color of law and within the scope of his employment.

11. Defendant CITY OF CHICAGO is a political subdivision of the state of Illinois. At the time of the events giving rise to this Complaint, it was the employer of Defendant James Allen and Defendant Mark Czapla, who acted pursuant to the City's policies and practices.

**General Allegations**

12.     Leonard Ackerman suffers from a variety of health problems. In June of 2014, these problems included heart disease, diabetes, herniated and bulging discs, spinal stenosis, sciatica, temporomandibular joint disorder (TMJ), and an injury to his right shoulder that left him without a rotator cuff and with limited range of motion on that side.

13.     As a result of these conditions, Mr. Ackerman experiences chronic pain. To manage his pain, Mr. Ackerman is under the care of Dr. Jay Kiokemeister, MD, of Health Benefits Pain Management, located at 2923 North California.

14.     By 2014, Mr. Ackerman had been a patient of Dr. Kiokemeister for about three years. Dr. Kiokemeister has been prescribing oxycodone for Mr. Ackerman's pain since at least 2012.

15.     Patients taking oxycodone frequently have difficulty getting their prescriptions filled.  The drug is tightly regulated, and pharmacies often do not keep the medication in stock.

16.     In addition, pharmacists are apt to be suspicious when they see a prescription for oxycodone because many people attempt to obtain the drug illegitimately.

17.     On June 23, 2014, Mr. Ackerman had received a new prescription for 30 milligram tablets of oxycodone from Dr. Kiokemeister.

18.     The prescription was entirely valid and legal.

19.     Mr. Ackerman went to several pharmacies on the north side of Chicago attempting to fill the prescription.

20.     None of the pharmacies had the medication in stock.

21.     He finally went to the Walgreens Pharmacy at 3019 West Peterson Avenue in Chicago, Illinois.

22. He handed his prescription to a Walgreens employee behind the pharmacy counter.

23. The pharmacist left the counter with Mr. Ackerman's prescription to check whether the medication was in stock and available. When she returned to the counter, she told Mr. Ackerman that the pharmacy did not have 20 mg tablets in stock. She did not give Mr. Ackerman back his prescription.

24. Mr. Ackerman then explained that his new prescription was for 30 mg tablets, not 20 mg tablets, and asked if she would check again to see if the correct dose was available. The employee refused to look for the medication, and continued to retain Mr. Ackerman's prescription.

25. Mr. Ackerman, quite frustrated, asked to speak to the pharmacy manager.

26. The manager also refused to look for the correct dose of the medication, and asked Mr. Ackerman to leave. Several other Walgreens employees, apparently managers, also asked Mr. Ackerman to leave. Mr. Ackerman asked several times for his prescription back, but no one returned it to him.

27. Mr. Ackerman waited quietly near the pharmacy counter for someone to return his prescription so that he could leave. While he was waiting, he again asked a Walgreens manager to return his prescription so that he could get his medication elsewhere.

28. After Mr. Ackerman had been waiting for several minutes, Defendants Allen and Czapla arrived at the Walgreens.

29. When he saw the officers, Mr. Ackerman approached them to seek their help. He began to explain his situation and that he needed his prescription back so that he could take it to another pharmacy.

30. The Defendant Officers told Mr. Ackerman that someone from Walgreens had called them because he would not leave.

31. The Defendant Officers accused Mr. Ackerman of having no prescription, and they told him that attempting to get medication without a valid prescription was a felony. Mr. Ackerman explained to the officers that he had a valid prescription.

32. The Defendant Officers also told him that he was trying to get the medication three weeks too early. This was not true.

33. Without warning and without informing Mr. Ackerman that he was being placed under arrest, Officer Czapla grabbed Mr. Ackerman's wrists and pulled his arms behind his back.

34. Because of the injury to his right shoulder, Mr. Ackerman's right arm does not bend behind his back.

35. Alarmed and immediately in pain from the attempt to twist his right arm, Mr. Ackerman explained to Defendant Czapla he had had shoulder surgery and that if Defendant Czapla persisted in twisting his arm, he would break it. Defendant Czapla replied, "Good, we'll break both your arms."

36. The pain was excruciating and Mr. Ackerman began to scream.

37. At that point, Officer Allen took Mr. Ackerman's right arm and continued trying to pull it back.

38. Meanwhile, Defendant Czapla began gouging his thumb into the muscle of Mr. Ackerman's inner left forearm.

39. This action tore apart the muscles, blood vessels and tendons in Mr. Ackerman's left arm and dislocated his left elbow. His forearm was swollen and black from bruising.

40. Mr. Ackerman attempted to change the position of his arm to alleviate the pain.

41. At that point, Defendant Czapla said, "This is what we do to people who resist arrest." He then slammed his own arm and fist down onto Mr. Ackerman's dislocated left elbow.

42. The pain was so intense that Mr. Ackerman went in and out of consciousness.

43. Defendant Allen continued shaking, twisting, bending, and pulling Mr. Ackerman's right arm and broke his right elbow.

44. Mr. Ackerman did not understand why he was under arrest, and during the struggle asked Czapla, "What about my rights?" Defendant Czapla replied, "You don't get any rights."

45. After they finished abusing Mr. Ackerman and recognized how badly injured he was, the Defendant Officers called for an ambulance. He was taken to Swedish Covenant Hospital where only his left elbow was treated.

46. Both of Mr. Ackerman's arms continued to hurt badly as a result of his injuries. A week after his encounter, he went to Alexian Brothers Hospital to have his right arm examined. It was then that he learned that his right elbow was also broken.

47. Mr. Ackerman was not armed during his encounter with Defendant Officers. At no time did Mr. Ackerman threaten the Defendant Officers, make any threatening gestures, or pose any kind of physical threat to Officers Allen and Czapla.

48. Mr. Ackerman was falsely charged with trespassing, battery, and resisting arrest. The first two charges were dropped, and, at trial, Mr. Ackerman was acquitted of resisting arrest.

**Mr. Ackerman's Damages**

49.     As described above, as a result of the excessive force used by Officers Allen and Czapla, Mr. Ackerman suffered a dislocated left elbow, a broken right elbow, and deep bruising, swelling, and damage to the muscles, tendons and blood vessels of his left arm.

50.     These injuries caused intense pain and suffering that continue to this day. Mr. Ackerman still experiences constant excruciating pain in his left elbow and forearm arm that is not relieved even by oxycodone. He is unable to sleep from the pain in his left arm.

51.     In addition, Defendants' violence severely frightened Mr. Ackerman, who did not understand why he was under attack. He was also frightened by Defendants' apparent enjoyment of Mr. Ackerman's suffering.  As a result, he has suffered extreme emotional damages from his encounter that have resulted in loss of sleep, anxiety, and depression.

52.     Mr. Ackerman has also been unable to work since the injury.  He has therefore lost income as a result of the Defendant Officers' misconduct.

**Count I – 42 U.S.C. § 1983**
**Excessive Force**

53.     Plaintiff incorporates paragraphs 1-53 by reference as if fully restated herein.

54.     As described more fully above, Defendant Officers used excessive force against Plaintiff in violation of his rights under the Fourth Amendment.

55.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally and with willful indifference to Plaintiff's constitutional rights.

56.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

57.     As a result of Defendants Allen and Czapla's unjustified and excessive use of force, Plaintiff suffered pain and injuries, including physical injuries and emotional distress.

58. Further, Plaintiff's injuries were proximately caused by the Defendant City of Chicago's policy, practice, and custom of failing to train, supervise and control its police officers. Defendant Officers Allen and Czapla's misconduct was undertaken pursuant to the policy, practice, and custom of the City of Chicago in that:

(1) as a matter of both policy and practice, the City of Chicago directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

(2) as a matter of both policy and practice, the City of Chicago facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago police officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff;

(3) generally, as a matter of widespread practice so prevalent as to constitute policy, officers of the City of Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the City of Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

(4) Municipal policymakers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which officers fail to report, or actively conceal, misconduct committed by other officers, such as the misconduct at issue in this case; and/or

(5) The City of Chicago has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

### Count II – 42 U.S.C. § 1983
### Conspiracy

59. Plaintiff incorporates paragraphs 1-59 by reference as if fully restated herein.

60. As described more fully above, Defendant Officers Allen and Czapla reached an agreement among themselves to use excessive force on Plaintiff and thereby deprive him of his constitutional rights.

61. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willing participant in the joint activity.

62. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

63. As a direct and proximate result of the illicit prior agreement described above, Plaintiff's rights were violated and he suffered physical, emotional, and financial injury as described above.

64. Further, Plaintiff's injuries were proximately caused by the Defendant City of Chicago's policy, practice, and custom of failing to train, supervise and control its police officers. Defendant Officers Allen and Czapla's misconduct was undertaken pursuant to the policy, practice, and custom of the City of Chicago in that:

(1) as a matter of both policy and practice, the City of Chicago directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

(2) as a matter of both policy and practice, the City of Chicago facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago police officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff;

(3) generally, as a matter of widespread practice so prevalent as to constitute policy, officers of the City of Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the City of Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

(4) Municipal policymakers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which officers fail to report, or actively conceal, misconduct committed by other officers, such as the misconduct at issue in this case; and/or

(5) The City of Chicago has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

### Count III - 42 U.S.C. § 1983
### Failure to Intervene

65. Plaintiff incorporates paragraphs 1-65 by reference as if fully restated herein.

66. As described more fully above, Defendant Officers Allen and Czapla had a reasonable opportunity to intervene to prevent the violation of Plaintiff's constitutional rights, but they failed to do so.

67. Defendant Officers Allen and Czapla's actions were undertaken intentionally, with malice and reckless indifference to Plaintiff's constitutional rights.

68. As a result of Defendants Allen and Czapla's failure to intervene, Plaintiff suffered, physical, emotional, and financial injury as described above.

69. Further, Defendant Allen and Czapla's failure to intervene to prevent Plaintiff's injuries was proximately caused by the Defendant City of Chicago's policy, practice, and custom of failing to train, supervise and control its police officers. Defendant Officers Allen and Czapla's misconduct was undertaken pursuant to the policy, practice, and custom of the City of Chicago in that:

(1) as a matter of both policy and practice, the City of Chicago directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

(2) as a matter of both policy and practice, the City of Chicago facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago police officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff and discouraging intervention to prevent them;

(3) municipal policy makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which officers fail to report, or actively conceal, misconduct committed by other officers, such as the misconduct at issue in this case.

(4) The City of Chicago has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

WHEREFORE, Plaintiff Leonard Ackerman respectfully requests that this Court enter judgment in his favor and against Defendants ALLEN and CZAPLA and Defendant CITY OF CHICAGO, awarding compensatory damages, attorneys' fees, and punitive damages against Defendant ALLEN and CZAPLA in their individual capacities, as well as any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff, LEONARD ACKERMAN, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

/s/ Gretchen E. Helfrich
*One of Plaintiff's Attorneys*

Jon Loevy
Arthur Loevy
Gretchen E. Helfrich
LOEVY & LOEVY
311 North Aberdeen Street
Third Floor
Chicago, Illinois 60607
Phone: (312) 243-5900
Fax:    (312) 243-5902
Jon@loevy.com
Arthur@loevy.com
Gretchen@loevy.com