UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **LEONARD ACKERMAN,** | ) |
| **Plaintiff,** | ) ) ) |
| v. | ) No. 16 C 6199 ) ) Chief Judge Rubén Castillo |
| **OFFICER JAMES ALLEN, OFFICER MARK CZAPLA, and THE CITY OF CHICAGO, ILLINOIS** | ) ) ) ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER

Leonard Ackerman ("Plaintiff") brings this civil rights action under 42 U.S.C. § 1983 against Chicago Police Officers James Allen and Mark Czapla (collectively "Defendant Officers") and the City of Chicago, Illinois (the "City") (collectively "Defendants"). Defendants now move to bifurcate and stay discovery on Plaintiff's municipal liability claims pursuant to FED. R. CIV. P. 42(b). (R. 24, Mot. to Bifurcate at 1.) For the reasons stated below, Defendants' motion is granted.

### RELEVANT FACTS

Plaintiff is a 59-year-old man who suffers from a variety of health problems, including heart disease, diabetes, herniated and bulging discs, spinal stenosis, sciatica, temporomandibular joint disorder, and an injury to his right shoulder that left him without a rotator cuff and with limited range of motion on that side. (*Id.* ¶¶ 1, 12.) As a result of these conditions, Plaintiff has been prescribed oxycodone since 2012. (*Id.* ¶¶ 13-14.) On June 23, 2014, Plaintiff's doctor issued him a new prescription for 30 mg tablets of oxycodone. (*Id.* ¶ 17.) Plaintiff alleges that the prescription was valid and legal. (*Id.* ¶ 18.)

Later that day, Plaintiff stopped at the Walgreens Pharmacy located at 3019 West Peterson Avenue in Chicago, Illinois, to pick up his 30 mg tablet prescription from the pharmacy. (*Id.* ¶¶ 21-22.) After Plaintiff handed his prescription to a Walgreens pharmacy employee, the employee told him that the pharmacy did not have 20 mg tablets in stock. (*Id.* ¶ 23.) The employee did not give Plaintiff back his prescription. (*Id.*) Plaintiff explained that his new prescription was for 30 mg tablets, not 20 mg tablets, and asked if she would check again to see if the correct dose was available. (*Id.* ¶ 24.) Plaintiff alleges that the employee refused to look for the medication and continued to retain Plaintiff's prescription. (*Id.*)

After Plaintiff asked to speak to a manager, he alleges that the manager refused to look for the 30 mg dose of the medication and asked Plaintiff to leave. (*Id.* ¶¶ 25-26.) Plaintiff asked several times for his prescription, but no one would return it to him. (*Id.* ¶¶ 26-27.) Several minutes later, Defendant Officers arrived. (*Id.* ¶¶ 28.) Plaintiff alleges that he immediately approached Defendant Officers to seek their assistance in getting his prescription back so that he could take it to another pharmacy. (*Id.* ¶ 29.)

Defendant Officers explained that someone from Walgreens had called them because Plaintiff would not leave the store. (*Id.* ¶ 30.) Plaintiff alleges that Defendant Officers accused him of having no prescription or of attempting to fill his prescription three weeks early. (*Id.* ¶¶ 31-32.) Plaintiff alleges that he informed them that his prescription was valid and not early. (*Id.*) Plaintiff alleges that Officer Czapla suddenly grabbed his wrist and pulled his arms behind his back, without any warning that Plaintiff was being arrested. (*Id.* ¶ 33.) Plaintiff alleges that he explained to Officer Czapla that he had had shoulder surgery and that if Officer Czapla persisted in twisting his arm, he would break it. (*Id.* ¶ 35.) Officer Czapla allegedly replied, "Good, we'll break both your arms." (*Id.*)

Plaintiff alleges that Officer Allen then took Plaintiff's right arm and continued to pull it back, while Officer Czapla began gouging his thumb into the muscle of Plaintiff's inner left forearm. (*Id.* ¶¶ 37-38.) Plaintiff claims that this action severely injured his left arm, left it swollen and bruised black, and dislocated his left elbow. (*Id.* ¶ 39.) Plaintiff alleges that Officer Czapla said, "This is what we do to people who resist arrest" before striking Plaintiff's dislocated elbow, while Officer Allen broke his right elbow. (*Id.* ¶¶ 41, 43.) The pain caused Plaintiff to lose consciousness. (*Id.* ¶ 42.) During the arrest, Officer Czapla allegedly stated, "You don't get any rights." (*Id.* ¶ 44.) Finally, Defendant Officers called an ambulance, which took Plaintiff to Swedish Covenant Hospital where only his left elbow was treated. (*Id.* ¶ 45.) Plaintiff was charged with trespass, battery, and resisting arrest; the first two charges were dropped, while Plaintiff was acquitted of resisting arrest at trial. (*Id.* ¶ 48.)

## PROCEDURAL HISTORY

On June 14, 2016, Plaintiff filed his complaint, listing three counts under Section 1983 against the Defendant Officers: excessive force (Count I), conspiracy to use excessive force (Count II), and failure to intervene to prevent the violation of his constitutional rights (Count III). (*Id.* ¶¶ 53-69.) Additionally, each count includes a municipal-liability claim against the City under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), as Plaintiff claims that his injuries stemmed from the City's policy, practice, or custom of failing to prevent such incidents. (*See id.* at ¶¶ 58, 64, 69.) Defendant Officers and the City answered separately on September 6, 2016. (*See* R. 16, Officers' Answer; R. 17, City's Answer.) In their answer, Defendant Officers raised three affirmative defenses: qualified immunity, failure to mitigate damages, and contributory negligence. (R. 16, Officers' Answer at 12.)

On November 8, 2016, Defendants filed their joint motion to bifurcate and to stay discovery on Plaintiff's *Monell* claims. (R. 24, Mot. to Bifurcate.) Defendants argue that bifurcating the *Monell* claims would result in more efficient, streamlined litigation, would prevent undue prejudice to Defendants, and would allow for more concentrated discovery. (*Id.* at 3.) Additionally, Defendants attached to their motion a limited consent by the City to the entry of judgment against it if Plaintiff prevails on the claims against the individual officers. (R. 24-3, Limited Consent.) The City would not admit any wrongdoing or culpability under *Monell*, but it would consent to judgment against it for compensatory damages and attorney's fees (without requiring Plaintiff to prove the City responsible under *Monell*) if either Defendant Officer were found to have violated Plaintiff's constitutional rights, even if the Defendant Officers were found not liable due to qualified immunity. (*Id.* at 2.)

Plaintiff responded to the motion on December 9, 2016. (R. 27, Resp.) Plaintiff argues that bifurcation would actually increase the burden of discovery and would create a much greater burden on the Court and Plaintiff, by requiring the parties to proceed through two complete trials dealing with similar issues over the course of years. (*Id.* at 4-12.) Further, Plaintiff argues that proceeding to trial on all claims would not substantially prejudice Defendants, as limiting instructions are sufficient to counter any improper inferences of guilt by the jury. (*Id.* at 9-11.) Finally, Plaintiff argues that the limited consent would provide Plaintiff no benefits he is not already entitled to and would unfairly deprive Plaintiff of the opportunity to hold the City publicly responsible for its policies and practices, so it should not weigh in favor of bifurcation. (*Id.* at 7-9.)

## LEGAL STANDARD

Under Rule 42(b), the Court has considerable discretion to decide claims or issues in separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize." FED. R. CIV. P. 42(b); *Krocka v. City of Chi.*, 203 F.3d 507, 516 (7th Cir. 2000) ("The district court has considerable discretion to order the bifurcation of a trial, and we will overturn this decision only upon a clear showing of abuse." (citation and internal quotation marks omitted)). A court may order bifurcation "if the separation would prevent prejudice to a party or promote judicial economy," so long as bifurcating "will not prejudice the non-moving party or violate the Seventh Amendment." *Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007).

## ANALYSIS

Under *Monell*, "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. In order for liability to attach under *Monell*, a plaintiff must allege that a local government *itself* caused or participated in the deprivation of his rights. *Id.* at 694. A plaintiff's *Monell* claim against a municipality is proper "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *League of Women Voters of Chi. v. City of Chi.*, 757 F.3d 722, 727 (7th Cir. 2014) (quoting *Monell*, 436 U.S. at 694). A municipality may be liable for a Section 1983 violation in one of three ways:

> (1) through an express policy that, when enforced, causes a constitutional deprivation; (2) through a wide-spread practice that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with final decision policymaking authority.

5

*Johnson v. Cook Cty.*, 526 F. App'x 692, 695 (7th Cir. 2013) (citation and internal quotation marks omitted).

Plaintiff alleges that his injuries were proximately caused by the City's policy, practice, and custom of failing to train, supervise, and control its police officers. (R. 1, Compl. ¶¶ 58, 64, 69.) Plaintiff alleges specifically that the City fails to prevent similar misconduct, fails to discipline officers who engage in similar misconduct, and knowingly condones a "code of silence" in the Chicago Police Department that allows similar misconduct to go unpunished. (*Id.*) In light of these claims, Defendants asks the Court to bifurcate the *Monell* claims and the individual Section 1983 claims brought against Defendant Officers. (R. 24, Mot. to Bifurcate at 1.) First, Defendants argue that bifurcating and staying the *Monell* claims would best minimize the complexity and burdens of litigation. (*Id.* at 3.) Defendants argue that Plaintiff is likely to take depositions of both current and former high-ranking personnel of the Chicago Police Department to prove his *Monell* claims. (*Id.* at 4.) Further costs would be incurred by both parties because both Plaintiff and the City will seek to retain *Monell*-related expert witnesses. (*Id.*) By waiting to engage in this discovery only if Plaintiff has established the existence of an underlying constitutional violation, Defendants argue that bifurcation would result in more cost-effective and streamlined litigation. (*Id.*)

Second, Defendants argue that bifurcating and staying the *Monell* claims best serves the interest of judicial economy. (*Id.* at 5.) They argue that bifurcation of the *Monell* claims would eliminate the need for: (1) judicial intervention into discovery disputes arising from these complex claims; (2) briefing and ruling on the summary judgment motion the City will invariably bring; and (3) a trial that will be longer and more factually and legally complex than a

trial focused on the Defendant Officers' liability, if the claims survive summary judgment. (*Id.* at 6.)

Third, Defendants argue that bifurcation would reduce the risk of unfair prejudice to the parties at trial. (*Id.* at 7.) They argue that trying the individual and municipal liability claims together would prejudice both sets of defendants: the jury may infer the Defendant Officers' guilt from evidence that other unrelated officers had engaged in similar misconduct, and it may seek to improperly hold the City responsible on some form of *respondeat superior* liability after hearing in detail about the Defendant Officers' actions, even if *Monell* liability is not appropriate. (*Id.* at 7-9.) Defendants also argue that combined litigation could even prejudice Plaintiff's individual claims by diverting attention from his alleged treatment in order to probe the City's practices more generally. (*Id.* at 9.) As a result, Defendants argue that a single trial, with both Defendant Officers and the City as defendants, would prejudice all parties. (*Id.*)

Lastly, Defendants argue that its limited consent to an entry of judgment ensures that bifurcation would not prejudice Plaintiff, as he could recover full compensatory and litigation-related damages if the factfinder determines that a constitutional violation took place. (*Id.* at 10-12.) Plaintiff already must prove that an underlying constitutional violation occurred in order to prevail on his *Monell* claims. (*Id.* at 11 (citing *Treece v. Hochsteler*, 213 F.3d 360, 364 (7th Cir. 2000)).) Thus, Plaintiff's entire case could be resolved, with attorney's fees, without having to go through lengthy *Monell*-related discovery and litigation.

In response, Plaintiff argues that bifurcation would complicate the litigation, not simplify it. (*See* R. 27, Resp. at 4.) In particular, Plaintiff argues that bifurcation would make discovery more burdensome than trying the claims together. (*Id.* at 4-6.) First, Plaintiff suggests that the bulk of its *Monell*-related discovery would focus on matters in the public record and available

7

through the Illinois Freedom of Information Act, meaning that bifurcation would not relieve the City of the burden of producing such materials. (*Id.* at 4.) Further, Plaintiff argues that he will likely need to retain expert witnesses to testify about reasonable police practices in order to prove his claims against the Defendant Officers, even if the trial is bifurcated. (*Id.* at 5.) He will also need to depose the Defendant Officers about their training, policies, procedures, and disciplinary histories. (*Id.* at 6.) As a result, Plaintiff argues, bifurcating would not save the parties the expenses of engaging experts and seeking discovery on police practices, but would instead require that they do so twice. (*Id.* at 6.)

Next, Plaintiff argues that the City's Limited Consent is fundamentally insufficient and does not justify bifurcation. (*Id.*) He argues that the Limited Consent is not authorized by any Federal Rule of Civil Procedure and is "thus procedurally anomalous, if not improper." (*Id.*) Further, Plaintiff argues that Illinois law already requires the City to indemnify any compensatory damages judgments incurred by its police officers for conduct within the scope of their employment. (*Id.*) Because Defendants have already admitted that Defendant Officers were acting within the scope of their employment, (R. 24, Mot. to Bifurcate at 10), Plaintiff argues that the limited consent does not provide any benefit "other than a promise to honor its previously existing statutory and contractual obligations," (R. 27, Resp. at 7). Instead, the City's limited consent would unfairly deprive him of the important non-monetary interest that his action against the City promotes. (*Id.*) Plaintiff argues that the City is undermining the very goals of *Monell* by seeking to avoid scrutiny of and responsibility for its policies and practices. (*Id.* at 8.)

Lastly, Plaintiff argues that considerations of prejudice weigh against bifurcation, not in its favor. (*Id.* at 9.) Plaintiff argues that bifurcating would not prevent a jury considering Plaintiff's *Monell* claims from improperly inferring the City's guilt from Defendant Officers'

conduct: to prove his *Monell* claim, Plaintiff would have to show that the City's actions were the moving force behind the constitutional violation, requiring him to present evidence of that violation. (*Id.* at 9-10.) To the extent that there is a risk of prejudice from trying the claims together, Plaintiff argues that jury instructions are sufficient to prevent any improper conflation of the claims. (*Id.*)

When dealing with *Monell* claims, bifurcation offers many advantages. First, because there can be no *Monell* liability unless the plaintiff suffered a constitutional violation, disposition of the individual claims may either legally or practically end the litigation altogether. *See Merritt v. Baker*, 668 F. App'x 164, 166 (7th Cir. 2016) ("[A] claim under *Monell* . . . cannot be supported if . . . no constitutional violation occurred in the first place."). Thus, if a plaintiff fails to prove his underlying individual claim, then he is barred from bringing a corresponding *Monell* claim against the municipality. *See City of L.A. v. Heller*, 475 U.S. 796, 799 (1986) (holding that a constitutional injury is a predicate to recovery under *Monell*). Conversely, if the plaintiff proves the existence of a violation, then he may decide not to bring the *Monell* claim at all because Illinois requires local public entities to pay compensatory damages arising from any tort committed by an employee acting within the scope of his employment. 745 ILL. COMP. STAT. 10/9-102; *see also Wilson v. City of Chi.*, 120 F.3d 681, 684-85 (7th Cir. 1997) (describing how a plaintiff, after receiving a judgment against individual defendants, may directly sue a municipality under 745 ILL. COMP. STAT. 10/9-102 if it does not concede to payment). In either case, there is a significant possibility that after narrowly litigating the underlying Section 1983 claim, proceeding to the more expansive *Monell* issues may become entirely unnecessary.

Given that first addressing the individual claims may eliminate the need to proceed to the *Monell* claims at all, it is significant that bifurcation may also significantly expedite litigation of

9

the individual claims themselves. In particular, postponing *Monell*-related discovery until after resolving the individual claims allows the party to avoid broad questions about the City's training and disciplinary policies, the conduct of unrelated officers, and other such systemic issues. Instead, the parties can focus on establishing what happened to the plaintiff and whether it denied him his constitutional rights. By limiting the scope of this initial stage of litigation, it is possible to resolve these threshold issues more quickly. *See, e.g., Clarett v. Suroviak*, No. 09 C 6918, 2011 WL 37838, at *2 (N.D. Ill. Jan. 3, 2011) ("[B]ifurcation allows a bypass of discovery relating to the *Monell* claims, which can add significant, and possibly unnecessary, time, effort, cost, and complications to the discovery process." (citation omitted)).

Bifurcation also reduces the risk of unfairly prejudicial evidence being presented at trial. *Clarett*, 2011 WL 37838, at *2. By their very nature, *Monell* claims normally invite the use of evidence of other instances where municipality employees violated an individual's constitutional rights. *See Carr v. City of N. Chi.*, 908 F. Supp. 2d 926, 934 (N.D. Ill. 2012) (explaining that plaintiffs seek the broad and extensive evidence that is typical in *Monell* cases, including detailed information concerning over eighty excessive force complaints which presumably include non-party officers). Evidence of other non-party officers using excessive force could lead the jury to infer that the Defendant Officers committed similar acts, even if the evidence presented at trial did not support such a finding. It is true that courts may minimize this risk by instructing the jury, and juries are presumed to dutifully follow limiting instructions. *See McLaughlin v. State Farm Mutual Auto. Ins. Co.*, 30 F.3d 861, 870-71 (7th Cir. 1994). However, while jury instructions may correct for such prejudice, bifurcation avoids it entirely.

Although bifurcation serves many purposes, it is still important that it not unfairly prejudice the nonmoving party. *Chlopek*, 499 F.3d at 700; *Krocka*, 203 F.3d at 516. In a *Monell*

case, the plaintiff seeks compensatory damages, but there are also important non-economic benefits to suing a municipality as opposed to just municipal employees. Most significantly, plaintiffs might seek to hold the municipality publicly responsible for its policies that contributed to their injuries. *See Medina v. City of Chi.*, 100 F. Supp. 2d 893, 896 (N.D. Ill. 2000). This serves both to deter future misconduct and to publicly vindicate that the plaintiff was wronged. *Id.*

After carefully considering the arguments on both sides, the Court finds that bifurcation is appropriate in this case. Because *Monell* claims require an extensive amount of evidence that could be made unnecessary through bifurcation, staying the *Monell* claims would greatly increase judicial efficiency and minimize prejudice to all parties. *See Terry v. Cook Cty. Dep't of Corr.*, No. 09 C 3039, 2010 WL 2720754, at *2 (N.D. Ill. July 8, 2010) (noting that claims of municipal liability require "an extensive amount of work on the part of plaintiff's attorneys and experts, and an extraordinary amount of money must be spent to prepare and prove them" (citation omitted)).

Although Plaintiff argues that bifurcating this case would not significantly decrease the burden of discovery, this Court finds his arguments unpersuasive. Plaintiff's first argument, that the City is already obligated to provide a large number of related documents under the Illinois Freedom of Information Act, is true as far as it goes but does not show that discovery would create no burden. First, although Plaintiff could pursue these documents outside litigation, this does not detract from the fact that the City would have to produce them for litigation. Simply put, just because Plaintiff has a right to this information, it does not follow that actually providing it creates no burden. Presumably, Plaintiff will not seek out this information except for use in proving his *Monell* claims. He will also likely wait to do so until it becomes clear that his

11

*Monell* claims can proceed, if he obtains a judgment against the Defendant Officers. Thus, discovery of these documents will not occur unless they are needed, potentially saving both parties the time and expense of production and review. This furthers the ends of judicial economy. The Court also observes that Plaintiff has not argued that these publicly available documents are the *only* ones he will seek to prove his *Monell* claim; if he would also seek other discovery, then his argument that there is no burden because the City is obligated to provide some information has even less force.

Plaintiff also argues that he will need to retain experts and inquire about the Defendant Officers' training even if the claims are bifurcated, and thus that bifurcating will not save any appreciable effort. (R. 27, Resp. at 5-6.) This argument does not stand up to scrutiny. Although Plaintiff may well present an expert to testify about reasonable police practices in a situation similar to Plaintiff's, this expert testimony is not the same that would be necessary to prove a *Monell* claim. *Medina*, 100 F. Supp. 2d at 894 (noting that an excessive force claim is "focused on the specific incident involving the plaintiff and does not involve . . . inquiry into how the police department trains its officers, whether other officers shown to have used excessive force have been disciplined appropriately, and the like"). The scope of the testimony of an excessive-force expert and of a *Monell*-claim expert are widely divergent. The question is not, as Plaintiff puts it, whether bifurcation will "eliminate the need for expert discovery." (R. 27, Resp. at 5.) The question is whether the litigation can be streamlined by potentially avoiding the need to use expert testimony to explore the City's liability. Because the *Monell*-related expert testimony may become unnecessary depending on the outcome of the individual-claim litigation, the Court finds that bifurcation would increase judicial efficiency. Plaintiff's argument that he will need to depose the Defendant Officers about their training and disciplinary histories is unpersuasive for

the same reason: the scope of these inquiries, focused solely on the officers who were involved in Plaintiff's arrest, is much narrower than the discovery that would be necessary to prove a *Monell* claim, which would involve the Chicago Police Department and many other officers.

Ultimately, Plaintiff's claims fall into two categories. His individual claims against the Defendant Officers involve two officers and events that unfolded in a matter of minutes. To litigate these claims, Plaintiff must present evidence relating to these two officers and evidence establishing what happened during those minutes. Plaintiff's *Monell* claims, however, involve the conduct, training, and discipline of countless officers, as well as any number of statements and actions by Chicago officials, over the course of years. To litigate these claims, Plaintiff must collect and present sufficient evidence to paint a coherent picture of these parties' actions and omissions over this time period. The sums of evidence required by these two sets of claims are wildly different in scope. Plaintiff is correct that "no bright line exists separating *Monell* discovery from non-*Monell* discovery," (*id.* at 6), but the Court is satisfied that discovery will be significantly more focused if the Court bifurcates the issues than if it does not.

Bifurcation will also reduce unfair prejudice to Defendants by minimizing the opportunities for the jury to infer the guilt of one party by the acts of another. Plaintiff will likely seek to introduce evidence regarding alleged acts of misconduct by non-party police officers to prove his *Monell* claims. This evidence could lead the jury to infer that the Defendant Officers themselves engaged in similar misconduct regardless of the evidence presented against them at trial. Conversely, after hearing evidence of the distressing events Plaintiff alleges against the Defendant Officers, a jury could rule against the City in the absence of sufficient proof under *Monell* in order to "send a message." Plaintiff is correct that the Court could use limiting instructions to minimize any prejudice that might follow from presenting both the individual and

*Monell* claims in the same trial. However, the fact that such prejudice is curable does not mean that it is unavoidable. Although the unfair prejudice associated with trying the claims together would be slight, the Court still finds that preventing it entirely weighs slightly in favor of bifurcation.

Finally, the Court finds that bifurcation will not prejudice Plaintiff. Plaintiff argues that bifurcation would cause him considerable prejudice, in that it would considerably delay resolution of his claims. (R. 27, Resp. at 12.) The Court finds this argument to be unpersuasive. If the case were not bifurcated, Plaintiff would receive no relief until after the lengthy individual and *Monell* discovery and the lengthy combined trial, even if he were to prevail. In the event that he failed to sufficiently prove the underlying constitutional violation, he would have expended significant resources and time on Department-wide discovery for no purpose. If the *Monell* issue is saved for later, Plaintiff will know after the resolution of the comparatively narrow individual claims whether he is entitled to compensation; what is more, because the City has consented to an entry of judgment against it for compensatory damages and attorney's fees if Plaintiff shows a constitutional violation, Plaintiff can potentially receive this compensation in full after the shorter individual-claims trial. Bifurcation, with the limited consent in place, allows Plaintiff to recover more quickly, not less. Even without the limited consent, Defendants have admitted that the Defendant Officers were acting within the scope of their employment during the incident with Plaintiff. (R. 17, City's Answer ¶¶ 9-10.) Thus, if Plaintiff proves a constitutional violation, the City is required to indemnify Defendant Officers for any compensatory damages awarded against them.[1] 745 ILL. COMP. STAT. 10/9-102.

---

[1] To the extent that Plaintiff argues that the limited consent provides him no benefit to which he is not already entitled, the Court points out that the City consents to pay attorney's fees as well as statutory damages without any subsequent litigation under 42 U.S.C. § 1988, which is a significant benefit to Plaintiff. (R. 24-3, Limited Consent ¶ 4.)

14

The Court notes that "[i]n the Fourth Amendment context of false arrest and excessive force claims, courts in this District tend to grant bifurcation of *Monell* claims where the municipality offers a certification of entry of judgment." *Carr*, 908 F. Supp. 2d at 932 (collecting cases). Plaintiff cites numerous cases denying motions to bifurcate *Monell* claims (although many involve prison medical-care claims rather than excessive-force claims), (R. 27, Resp. at 2-3), and Defendants cite just as many granting these motions, (R. 28, Reply at 3). In deciding whether to bifurcate, the Court ultimately weighs the interests of judicial economy and any prejudice to the parties in light of the facts of the individual case. *See Ojeda-Beltran*, 2008 WL 2782815, at *1 ("Courts in our district have both granted and denied similar motions by the City. . . . These decisions reflect a case-specific assessment of the advantages and disadvantages of bifurcation."). In this case, the Court finds that bifurcation would significantly streamline the litigation without prejudicing any party.

Although the Court is granting the motion to bifurcate, by no means is the Court restricting Plaintiff from bringing his *Monell* claims against the City; bifurcating these claims is not the same as dismissing them. *See, e.g., Andersen v. City of Chi.*, No. 16 C 1963, 2016 WL 7240765, at *4 n.3 (N.D. Ill. Dec. 14, 2016) ("While it is certainly the case that *Monell* claims are in part intended to serve as a deterrent against future constitutional deprivations, . . . staying discovery on the *Monell* claims does not foreclose [the plaintiff] from pursuing his *Monell* claim if he is successful against the individual officers."); *Ojeda-Beltran*, 2008 WL 2782815, at *4 ("A necessary premise of the City's and Plaintiffs' arguments [regarding a limited consent] is that bifurcation of Plaintiffs' *Monell* claim means that the claim cannot go forward. This is a premise that we do not accept. If Plaintiffs are successful in their claims against Defendant Officers, they are free to pursue their *Monell* claim against the City.") Plaintiff must first litigate the claims

against Defendant Officers, however. The Court need not at this early stage address the question of whether Plaintiff is required to accept the City's Limited Consent, in which the City expressly disclaims *Monell* liability. (R. 24-3, Limited Consent ¶ 4.) For now, the Court merely holds that postponing litigation of the *Monell* claims is appropriate in light of the significant difference in judicial efficiency and the balanced prejudices to the parties.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to bifurcate and stay Plaintiff's 42 U.S.C. § 1983 *Monell* claims against the City (R. 24) pending resolution of the claims against Defendant Officers. The parties shall appear for a status hearing on May 10, 2017, at 9:45 a.m. to set a priority trial date for this lawsuit.

ENTERED: _____
**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: April 27, 2017**